## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAY QUIGLEY,<br>        *Plaintiff*, | ) | CASE NO. 3:19-cv-482 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| RIVERA, *et al.*,<br>        *Defendants*. | ) | February 7, 2023 |
| | ) | |

<u>MEMORANDUM OF DECISION</u>
**RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 105)**

Kari A. Dooley, United States District Judge:

Plaintiff Jay Quigley ("Quigley") commenced this civil rights action pursuant to 42 U.S.C. § 1983 asserting claims arising out of incidents that occurred between April 26 and April 29, 2018.[1] By motion dated April 5, 2022,[2] Defendants seek summary judgment on all claims on the ground that Quigley failed to properly exhaust his administrative remedies before commencing this action. For the following reasons, the motion for summary judgment is GRANTED in part and DENIED in part. (ECF No. 105)

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113–14 (2d Cir.

---

[1] Following initial review, the remaining claims are: Fifth Amendment retaliation claims related to an April 26, 2018 cell extraction against all defendants; Eighth Amendment excessive force claims against defendants Rivera, Roy, Behm, Velazquez, and Peart related to the cell extraction; Eighth Amendment excessive force claims against Rivera, Roy, and Behm related to Quigley's placement in in-cell restraints on April 26th; Eighth Amendment deliberate indifference to medical and mental health needs claims against Rivera, Scholz, and La Mountain related to Quigley's placement in a restrictive housing unit ("RHU") from April 26th to April 28th; and Eighth Amendment conditions of confinements claims against La Mountain, Cardona, Watson, Scholz, Davis, and Rivera related to Quigley's placement in the RHU from April 26th to April 28th. *See Initial Review Order,* ECF No. 8 at 13–26.
[2] The Complaint was filed by the Plaintiff *pro se.* ECF No. 1. On February 23, 2022, the Court (Merriam, U.S.D.J.) appointed Attorney Kristen Rossetti to represent Plaintiff. ECF No. 97. On October 5, 2022, this matter was transferred to the undersigned. ECF No. 118.

2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense. . . ." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the Court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the Court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts**[3]

Quigley was a sentenced inmate housed at McDougall-Walker Correctional Institution, and then Garner Correctional Institution, within the Connecticut Department of Correction ("DOC") during the time relevant to this action. Def. LRS at 1–2 ¶¶ 3–5. Quigley alleges that he was assaulted by DOC officers Rivera, Roy, Behm, Velasquez, and Peart during a cell extraction on April 26, 2018. Pl. LRS at 1 ¶¶ 3–18. Quigley was thereafter placed in a Restrictive Housing Unit ("RHU") without access to a pen and paper. *Id.* at 5 ¶ 58.

That same day, Quigley attempted to informally resolve this issue by requesting an apology from Rivera and Roy. *Id.* at ¶ 52. Quigley also asked Counselor Stanley to arrange for an apology. *Id.* According to Quigley, these requests went unacknowledged. *Id.* On May 1, 2018, Quigley wrote to Rivera and Stanley to demand a written apology. *Id.* at ¶ 54. This request was also ignored. *Id.* at ¶ 55.

On May 5, 2018—nine days following his alleged assault—Quigley filed his first grievance. *Id.* at ¶ 56. The grievance thoroughly, but exclusively, grieved the alleged excessive force used to extract Quigley from his cell on April 26, 2018. Ex. A, ECF No. 108-2 at 2. The grievance does not include concerns regarding the use of in-cell restraints in the RHU, or any conditions of confinement within the RHU. *See id.* On May 11, 2018, the grievance was returned without disposition on a CN 9606 form because Quigley needed to seek informal resolution with his unit manager or counselor by submitting a written request on a CN 9601 form. *Id.* at 3. Quigley was instructed to give his unit manager or counselor 15 days to respond to his CN 9601 request and then attach that correspondence to a new grievance filing. *Id.* The CN 9606 form also stated

---

[3] The facts are taken from the parties' Local Rule 56(a) Statements ("LRS") and supporting exhibits. As the merits of Quigley's claims are not at issue in this motion, the Court sets forth only those claims relevant to exhaustion of administrative remedies.

Quigley "may resubmit [his] grievance when it is in compliance with Administrative Directive 9.6, Inmate Administrative Remedies." *Id.*

On May 25, 2018, Quigley submitted a letter to Counselor Stanley that a grievance counselor construed as a request for informal dispute resolution. Bennet Aff., Ex. C, ECF No. 105-3 at 5 ¶¶ 20-21; Ex. F, ECF No. 105-6 at 8. This informal request was denied by Counselor Stanley on May 31, 2018. Bennet Aff., Ex. C, ECF No. 105-3 at 5 ¶ 24; Ex. F, ECF No. 105-6 at 8. By May 31, 2018, more than 30 days had passed since the cell extraction of which Quigley complained in his grievance.

On June 5, 2018—approximately 40 days following his cell extraction—Quigley re-filed his grievance. Quigley Decl., ECF No. 108-1 at 6 ¶ 69; ECF No. 108-6. On September 21, 2018, this re-filing was accepted. Ex. F, ECF No. 108-7 at 2. The grievance was denied on the ground that Quigley's claims were unsubstantiated and "[a]ll staff acted professionally in accordance with policies and procedures." *Id.* The re-filed grievance was not denied on the ground that it was untimely, and Quigley was instructed that he could appeal the grievance to the next level. *Id.*

Within five days of the denial of his re-filed grievance, Quigley alleges that he filed an appeal of the disposition of his grievance. Quigley Aff., ECF No. 108-1 at 7 ¶ 75. Quigley asserts that he received no response to this filing. *Id.* at ¶ 76. After making repeated inquiries as to the status of his appeal, on November 26, 2018, Quigley received a letter from an administrative remedies coordinator stating that the DOC had no record of receiving Quigley's grievance appeal. *Id.* at ¶¶ 77–78; Ex. I, ECF No. 108-10.

On December 1, 2018, Quigley re-submitted his grievance appeal. Quigley Decl., ECF No. 108-1 at 8 ¶ 79; Ex. J, ECF No. 108-11. In this filing, Quigley alleged that he had previously filed

a grievance appeal on September 21, 2018, but that this filing had been "conveniently lost." Ex. J,
ECF No. 108-11.

On December 17, 2018, Quigley's re-submitted grievance appeal was rejected solely on
the ground that the June 5, 2018 grievance was untimely. *Id.* The rejection of Quigley's grievance
appeal did not permit any further appeals. *Id.*

**Discussion**

Defendants assert that Quigley failed to properly exhaust his administrative remedies
prior to filing this lawsuit. Quigley argues that he fully exhausted his administrative remedies
because there was no deadline for re-filing a grievance returned without disposition, there is a
dispute of material fact as to whether Quigley timely filed his grievance appeal, and that
Defendants waived their right to assert that his grievances were untimely. With respect to the
claims arising out of the April 26, 2018 cell extraction, the Court agrees that there is a genuine
issue of material fact as to whether Quigley exhausted his administrative remedies. As to all
other claims, there is no genuine issue of material fact that Quigley did not exhaust his
administrative remedies before commencing this litigation.

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal
lawsuit to exhaust available administrative remedies *before* a court may hear his case. *See* 42
U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to
prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any
jail, prison, or other correctional facility until such administrative remedies as are available are
exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion
requirement applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion": the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, No. 14-cv-6606 (RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("The law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.").

The Supreme Court has held that the requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217–18 (citing *Woodford*, 548 U.S. at 93–95). In addition, exhaustion of administrative remedies must be completed before the inmate files suit. *Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008). Completing the exhaustion process after the complaint is filed does not satisfy the exhaustion requirement. *Neal v. Goord*, 267 F.3d 116, 122–23 (2d Cir.

2001).

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and internal citations omitted).

The *Ross* Court identifies three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the court is guided by these illustrations. *See Mena v. City of New York*, No. 13-cv-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendant bears the burden of proof. *See Jones*, 549 U.S. at 216. Once the defendant puts forth evidence that administrative remedies were not exhausted before the plaintiff commenced the action, the plaintiff must put forth evidence that administrative remedy procedures were not available to him

under *Ross*, or evidence which shows that he did exhaust his administrative remedies. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability").

The inmate grievance procedure is set forth in Administrative Directive 9.6. *See* Ex. D, ECF No. 105-4. An inmate must first attempt to resolve the matter informally. He may attempt to verbally resolve the issue with an appropriate staff member or supervisor. A.D. 9.6(6)(A). If attempts to resolve the matter verbally are not effective, the inmate must make a written attempt using form CN 9601 and send the form to the appropriate staff member or supervisor. *Id.* Once an informal resolution is submitted, a response shall be made within fifteen business days. *Id.* If the inmate is not satisfied with the response to his request, he may file a Level 1 grievance on form CN 9602. A.D. 9.6(6)(C). The Level 1 grievance must be filed within 30 days of the occurrence that gave rise to the grievance. *Id.*

A grievance may be returned to an inmate without disposition on form CN 9606, which signifies "that the grievance has not been properly filed and may be re-filed after the inmate has corrected the error." A.D. 9.6(6)(E). Neither Directive 9.6(6)(E) [4] nor CN 9606, the form DOC uses to return incorrectly filed grievances to an inmate, provides a deadline or time limit correct the error and resubmit the grievance. *See id.*; Ex. A, ECF No. 108-2 at 3.

Courts within the district have consistently denied motions for summary judgment premised upon a plaintiff's failure to exhaust administrative remedies when an otherwise timely

---

[4] Of note, the revised Administrative Directive 9.6 (which is effective April 30, 2021) provides a time limit of five calendar days to correct and resubmit a grievance rejected for a procedural defect. A.D. 9.6(6)(b)(2), available at https://portal.ct.gov/DOC/AD/AD-Chapter-9.

grievance is re-filed beyond the thirty-day window dating from the incident complained of in the grievance. *See, e.g.*, *Baltas v. Erfe*, 3:19-cv-1820 (MPS), 2020 WL 1915017, at *8–*9 (D. Conn. Apr. 20, 2020) (noting that correctional staff conduct could be considered as "thwart[ing] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" where a grievance is returned to an inmate with an instruction to re-file it and then the re-filed grievance is rejected as untimely); *Sease v. Frenis*, No. 3:17-cv-770 (SRU), 2021 WL 260398, at *8 (D. Conn. Jan. 25, 2021) ("The Defendants' proposed reading of A.D. 9.6— requiring even a corrected Level 1 grievance to be submitted in the 30-day window—is internally inconsistent and has no apparent precedential support."); *Abernathy v. Commissioner*, No. 3:20-cv-628 (VAB), 2022 WL 3139527, at *9–*10 (D. Conn. Aug. 5, 2022) (finding genuine issues of fact regarding whether plaintiff's "administrative remedies should be considered exhausted because his remedies were incapable of use" because "the administrative scheme under 9.6 failed to provide him with guidance about when he was required to refile his corrected Level-1 grievance after return without disposition"); *Olivencia v. Pun*, No. 3:21-cv-739 (OAW), 2022 WL 4329343, at *7 (D. Conn. Sept. 19, 2022) (noting that "it was not clear why Plaintiff's re-filed Level 1 grievance . . . which explained that his attached grievance receive no response—should have been rejected as untimely; any re-filed grievance necessarily would have been untimely").

Here, Quigley filed two timely, albeit incomplete, Level 1 grievances on May 5, 2018 and May 21, 2018. Neither the Administrative Directives nor form CN 9606 provided a deadline for Quigley to resubmit a compliant grievance. Quigley thereafter re-filed his Level 1 grievance, with the appropriate forms and materials attached, on June 5, 2018, 40 days after the cell extraction. Of particular significance, the re-filed grievance was accepted and decided on the merits on September 21, 2018. It is well-established in the Second Circuit that an exhaustion requirement is

satisfied "by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority." *Hill v. Curcione*, 657 F.3d 116, 125 (2d Cir. 2011); *Castillo v. Hogan*, No. 3:14-cv-1166 (VAB), 2018 WL 1582514, at *7 (D. Conn. Mar. 31, 2018) (noting that courts "have uniformly held that the exhaustion requirement under 42 U.S.C. § 1997e(a) is satisfied, if prison officials address and resolve a grievance on the merits despite the fact that it might not comply with procedural rules" because "when a state treats a filing as timely and resolves it on the merits . . . the grievance has served its function of alerting the state and inviting corrective action" (internal quotation marks and citation omitted)). The Court concludes that Defendants waived any claim that Quigley's June 5, 2018 re-filed grievance was not timely when it decided the grievance on the merits.

Defendants also assert that Quigley's Level 2 grievance appeal was not timely filed, which also establishes a failure by Quigley to exhaust his administrative remedies.[5] However, there is a genuine dispute of material fact as to whether Quigley's Level 2 grievance appeal was timely. Quigley submits, under oath, that he filed the Level 2 grievance on or about September 21, 2018, the date he received a decision on the merits of the Level 1 June 5, 2018 grievance. He contends that it was either lost or ignored by DOC officials. Quigley Decl., ECF No. 108-1 at 7. Defendants assert that they have no record of a Level 2 grievance being filed prior to November 1, 2018, which, based upon grievance logging and tracking protocols demonstrates that no Level 2 grievance appeal was timely filed as claimed by Plaintiff. They argue, essentially, that Plaintiff is not to be believed and that his attestation does not give rise to a genuine issue of material fact. The Court disagrees.

---

[5] Notably, the Level 2 grievance was not rejected on this basis. The Level 2 grievance appeal was rejected on the ground that the Level 1 grievance dated June 5, 2018 was not timely, a position which the Court rejects above.

A Plaintiff's sworn statement that he filed a grievance to which he received no response creates a genuine issue of material fact on the question of exhaustion and is sufficient to defeat summary judgment. *Cosby v. Bucior*, 3:21-cv-1491 (KAD), 2022 WL 17716491, at \*5 (D. Conn. Dec. 15, 2022) (finding genuine issue of material fact as to whether plaintiff exhausted administrative remedies where plaintiff submitted sworn declaration that he timely submitted a grievance form while defendants alleged they had no record of having received the grievance); *Baltas v. Rivera*, 3:19-cv-1043 (MPS) 2020 WL 6199821 at \*9 (D. Conn. Oct. 22, 2020). And if DOC officials did in fact misplace or ignore Quigley's first Level 2 grievance appeal, then Quigley would have either exhausted his administrative remedies or been deprived of an available remedy for the issue he sought to grieve. *See Baltas*, 2020 WL 6199821, at \*11 (citing *Hayes v. T. Dahlke*, 976 F.3d 259, 270 (2d Cir. 2020)). Accordingly, the motion for summary judgment as to Quigley's claims arising out of the April 26, 2018 cell extraction must be denied.

As indicated above, the Defendants have established conclusively that Quigley made no attempt to exhaust administrative remedies with respect to the use of in-cell restraints or the conditions of his confinement in the RHU. Quigley does not put forth any evidence to the contrary. Quigley's many grievances complain only of the excessive force used against him during the cell extraction on April 26, 2018 and do not mention or discuss any of the events thereafter. *See Shehan v. Erfe*, No. 15-cv-1315 (MPS), 2017 WL 53691, at \*8 (D. Conn. Jan. 4, 2017) (holding that the plaintiff had exhausted only those claims "that he actually asserted in [his] grievance"). As such, the motion for summary judgment as to these claims is granted.

**Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment, ECF No. 105, is DENIED as to Quigley's Eighth Amendment excessive force claim related to the April 26, 2018

cell extraction against defendants Rivera, Roy, Behm, Velazquez, and Peart and GRANTED as to

all other claims. The Clerk of the Court is directed to terminate defendants La Mountain, Cardona,

Scholz, Watson, and Davis.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of February 2023.

  _/s/ Kari A. Dooley_
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE